### LAKE SHORE TRANSIT CO. v. CORRIGAN et al.

(Circuit Court of Appeals, Sixth Circuit. May 11, 1905.)

#### No. 1,370.

Collision—Overtaking Steamships—Attempting to Pass.

Two steamers which overtook and attempted to pass another with a tow while coming down Lake St. Clair both *held* in fault, under the evidence, for a collision with the tow; one for crowding in when the other was attempting to pass between her and the tow, and the other for persisting in the attempt to pass after the danger should have been apparent.

[Ed. Note.—Collision, overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

Appeal from the District Court of the United States for the Northern District of Ohio.

Albert J. Gilchrist (Hermon A. Kelley, of counsel), for appellant.
Goulder, Holding & Masten, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is a composite litigation resulting from two successive collisions of vessels near the lower end of Lake St. Clair on July 31, 1899. The steamer George Spencer, which will be called the "Spencer," having in tow the barge B. L. Pennington, which will be called the "Pennington," was proceed-

ing down from the cut at the upper end of the lake toward the cut at the lower end at a speed of from 7 to 7½ miles an hour. The Spencer was about 230 feet in length, and the Pennington about 240. Following this tow, and advancing at a somewhat greater speed, was the Aurania, a steamer having a length of 352 feet. Behind the Aurania was coming the Cumberland, a steamer 250 feet in length, at a still greater speed—between 8 and 9 miles an hour. All four of the vessels were loaded. The Spencer and the Pennington had each a draught of 14½ feet, the Aurania 17¼ feet, and the Cumberland 16½ feet. The course of the Spencer and tow was on the right hand, coming down; that of the Aurania was on the left; and that of the Cumberland lay between these. The weather was clear and calm, and it was 10 or half past 10 in the forenoon. When within about a quarter of a mile of the Pennington, the Cumberland gave to the Spencer a passing signal of two blasts, signifying her purpose to go down on the port side of the Spencer, to which the Spencer responded, giving her assent. This exchange of signals took place about 4 miles above the Grosse Point Lightship, which is at the upper end of the lower cut. All the vessels advanced in the order above stated, the Aurania gaining on the tow, and the Cumberland gaining on the Aurania, until they reached a locality from 2 to 2½ miles above the lightship, where the Aurania had lapped the Pennington perhaps two-thirds the length of the latter, and the Cumberland was coming in between. Perceiving, as her master says, that the space between the Aurania and the Pennington was too close for the Cumberland to pass through, the engine of the latter vessel was checked, reversed, and then backed strong. The course of the Cumberland was nearer to the Pennington than to the Aurania. When the signals to the engine were commenced, the Cumberland had slightly lapped the Pennington. The consequence of the reversing and backing of the Cumberland was that her stern was thrown to port and her stem to starboard, and this continued until her starboard bow, and perhaps her stem, struck the Pennington on her port quarter; scraping her side as the Pennington went forward, and carrying off her yawl, which was suspended on davits over her stern. At about the time of the impact of the Cumberland upon the Pennington (those on the Cumberland say a little before) the latter sheered off to port rapidly, broke her tow line, and struck the Aurania, stem on, at a point on her starboard side about one-third of the Aurania's length from her stem, doing some damage, and suffering slightly herself. The vessels were all able to proceed.

The owner of the Aurania libeled the Cumberland, charging the latter with negligence in colliding with the Pennington and causing her to sheer into the Aurania, and with the damages to the latter resulting therefrom. And at the same time the owner of the Pennington filed its libel against the Cumberland for the damages sustained by the Pennington, charging the same faults. The owner of the Cumberland filed answers to each of these libels, and also filed petitions under rule 59—in the first case to bring in the Pennington to charge her with the damages to the Aurania; and, in the second,

to bring in the Aurania to charge her with the damages to the Pennington. In the pleadings of the Cumberland, she charged that the Aurania was at fault, in that, at the critical time of her attempt to pass between that vessel and the Pennington, the Aurania crowded over so much into her course that she was compelled to stop, and that the Cumberland was not at fault in her maneuvers to retrieve her situation; and, as to the Pennington, she answered that in what she did, causing injury, she was impelled by the Aurania, and was without fault, and charged the Pennington with negligence in sheering off, insisting that the sheer was not caused by the Cumberland. The cases were consolidated, evidence was taken, and the court gave judgment against the Cumberland for the damages of the Aurania and of the Pennington, respectively, holding the former vessel to have been the sole cause of the injuries suffered by each of the other vessels.

These are the outlines of the case. We come now to the consideration of the special circumstances which form the ground of the controversy. The testimony was all taken by depositions, and it follows that we have the case without that favor toward the decree which is usually accorded to a judgment from the circumstance that the judge saw the witnesses and heard them testify. But there is the general presumption of correctness in favor of the decree.

The witnesses, of whom there were some from each of the four vessels, give discordant testimony, and we cannot pin our faith to any particular one of them. In most instances it seems more or less colored by self-interest, bias, or favor. Thus Smith, the captain of the Cumberland, whose account seems to us to agree in general with the probabilities arising from undoubted facts, puts the course of the Aurania at the time when the passing signals were given at 1,000 feet distant from that of the Pennington. But we think his estimate extravagant, and that the distance was not more than 700 feet. So he gives the impression that, at the time when the Cumberland came up nearly abreast of the stern of the Pennington, the Aurania came up rapidly and decisively athwart his course. We do not think the conduct of the Aurania is subject to so severe a criticism. We do think, however, as hereafter explained, the Aurania had for some time been on a converging course, and, just prior to the coming in of the Cumberland, had been coming up to the course on which she intended to go through the cut below. Embarrassed as we should be by the conflict in the testimony without the aid of probabilities, yet, being aided by them, we have not much difficulty in reaching conclusions which satisfy us.

Without canvassing the testimony in detail, we are convinced that at the time the passing signals were given, and the manner in which the Cumberland would pass was settled and understood by all parties, the courses of the vessels were far enough apart to permit the navigation proposed to be safely done. No one seems to have had any apprehension of danger until the peril became imminent. If at the time the passing signals were blown, the Cumberland was a quarter of a mile astern of the Pennington, the latter must have run from 1¾ to 2 miles before the Cumberland reached

her, and the vessels were all in plain sight of each other. The safety of the course of the Cumberland depended largely upon the conduct of the Aurania and the Spencer and her tow. If they should crowd in at the moment of the Cumberland's passing, and especially at the time when the three vessels should be abreast of each other, a well-known situation of peril would arise. They both knew this, and were bound to abstain from such conduct. The Spencer, with her tow, held on their course, as was their duty, and no criticism is made by any one. If the Aurania had done likewise, there would have been no trouble. She was bound to hold on her course as long as she could without danger to herself. But it is manifest that she did not. Otherwise no such cramped situation as happened could have occurred. For, while there is much dispute as to the distances of the courses of the vessels apart when the passing signals were given, no one expresses any doubt that they were sufficient to make the passing safe. The only witness from the Aurania who testified to the management of her wheel is the captain, who stated that his memory of the events of that occasion was dim. The wheelsman is not produced or accounted for. But it is said that she was entitled to come up on her course before going down into the channel below, and that this was keeping her course, within the meaning of the rule prescribing the conduct of an overtaken vessel. Granting this to be so, she was bound to exercise this privilege at a time and under circumstances in which she would not needlessly involve the other ships in peril. The collisions occurred more than two miles above the upper end of the cut, and we cannot but think that the Aurania could and should have delayed her straightening up until after the Cumberland had passed. Instead of this, she came up in the nick of time to work the mischief which happened. Nor did the courses of the vessels come near enough together to excite any one's attention until the moment of their getting huddled together. There is some conflict in the testimony as to whether there was any exchange of passing signals between the Aurania and the Cumberland. The captain of the Aurania states that the water in Lake St. Clair is shoal, and gives this as a reason for coming up to his course through the cut. But it nowhere appears that the water these vessels were navigating was shallower between the place of the collisions and the cut than elsewhere in the lake. The captain of the Cumberland says there is no dredged channel above the lightship at the upper end of the cut, and other indications in the record confirm this statement. We note also that the captain of the Aurania states that, when he was coming astern of the Pennington, his course was about 300 feet distant from the Pennington, and had been parallel with her course all along. Being asked if it might not have been further than that, he answered:

"I don't think it was, for the reason that the channel there is 800 feet wide. She would be inside of the channel banks. I would keep inside of the channel bank, or keep away from the channel banks as much as possible. That would throw us both inside of the channel bank 150 feet, or so. I would figure that we were probably 300 feet away."

But the 800-feet channel did not extend up to that point by at least two miles. In view of the inaccuracy and uncertainty of this witness, it is to be regretted that the wheelsman of the Aurania was not called.

The captain of the Aurania testifies that he had already exchanged signals with the Cumberland when the Spencer exchanged hers, and that the agreement was that the Cumberland was to go down on his starboard hand; and this was what the Cumberland did. The testimony is convincing that there was no exchange of signals with the Aurania, but it matters little. Her captain heard the signals with the Spencer, and was in no doubt as to the proposed course of the Cumberland, and gave no sign of objection. In respect to the action of the Cumberland in stopping, there is no criticism, or at least none that seems more than half-hearted. And no fault on that score is alleged in the pleadings. The complaint is that she attempted to pass between the Aurania and the Pennington. The testimony of the master and the wheelsman of the Cumberland is that as they came in they had ported closer to the Pennington in order to escape the Aurania, which was coming up on the port side; and all the witnesses agree that the Cumberland came in quite near the Pennington. That being so, the question which presses is, what was the reason for her porting toward the Pennington and finally stopping? There can be but one answer. There was nothing in the way except the Aurania. The probability is very persuasive.

But we think also that the Cumberland persisted too long in her purpose to go between the Aurania and the Pennington. Upon her own showing, which we believe to be substantially correct in this respect, she had ported twice before she reached the Pennington, and this was because she saw the Aurania coming up across her bows. Her captain says he saw this, but expected she would straighten out. Considering the peril where several vessels are proceeding in the same direction and passing at full speed in such close quarters, we are constrained to think that reasonable prudence should have warned him, as the embarrassment began to appear, of the danger of making the attempt.

We have no doubt that the sheer of the Pennington was caused by the Cumberland. The concurrence of time of its commencement with that of the coming against her by the Cumberland, and the sufficiency of the impact upon her port quarter to drive the Pennington to port, are very persuasive to the conclusion we have reached. No other cause for her sudden departure from her course is shown with any such distinctness as to remove the strong impression which the facts referred to make upon our minds.

So far as the decree exonerates the Pennington, it will be affirmed, with costs. The decree against the Cumberland will be reversed, with costs, as against the Aurania; and the court below will be directed to enter a decree condemning the Aurania and the Cumberland, and assessing each of them with one-half the damages sustained by the Pennington and her costs, and the Cumberland with one-half the damages of the Aurania, without costs of that

court, and for satisfaction of the decree by the respective owners and stipulators for the last-named vessels in conformity with such decree.